**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

-----------------------------------------------X

Eve Wexler,

**Individually and on behalf of a class**        Case No. _____

**Plaintiff,**

v.

**Simmons Bank**

**Defendant**

-----------------------------------------------X

<u>**CLASS ACTION COMPLAINT FOR DAMAGES- JURY TRIAL**</u>

<u>**REQUESTED**</u>

1

## Nature of the Action

Plaintiff Eve Wexler on behalf of herself and all others similarly situated, files this Class Action Complaint against her lender Simmons Bank for its practice of unilaterally changing loan terms. The loan agreement stated the conditions under which an increase in Prime Rate would cause an increase in the amount of interest Plaintiff had to pay. The Bank changed the terms of the agreement by immediately increasing the amount of interest Plaintiff had to pay when Prime Rate increased. This error the Bank miscalculated accrued finance charges which caused the Bank to require a higher monthly payment than was due according to the terms of the loan.

1. Plaintiff Eve O. Wexler is an individual and resides in Dekalb County Georgia.
2. Defendant Simmons Bank is a Banking entity.
3. On or about June 2020, Wexler entered into a Home Equity Line of Credit Agreement (HELOC) with Ameris Bank for the purchase of Wexler's principal dwelling. **See attached Exhibit A.**
4. The interest rate on the HELOC was variable tied Prime Rate.
5. In the agreement, Wexler granted Ameris Bank a security interest in her home which is located in DeKalb County, Georgia.

2

6. Wexler originally borrowed approximately $184,000 and that is the approximate amount that remains outstanding.

7. Under the terms of the agreement, the first 10 years of the agreement (the "Advance Period") require only periodic monthly interest payments.

8. Wexler has made each periodic monthly interest payment.

9. On or about July 2020, the HELOC was sold to Georgia Banking Company ("GBC").

10. On or about July 2020, Georgia Banking Company began servicing the loan.

11. On information and belief, Georgia Banking Company continues to service this loan as of the day of the filing of this Complaint.

12. Georgia Banking Company is a Georgia bank.

13. On or about October 2020, the HELOC was sold to Landmark Community Bank ("Landmark").

14. Landmark had an agreement or understanding with Georgia Banking Company that GBC would be Landmark's agent to charge and collect interest from Wexler and to be Landmark's servicer for Wexler's loan for all purposes.

15. Georgia Banking Company continued to service the loan.

16. On or about November 2020, Georgia Banking Company hired Capital City Home Loans, LLC to be a sub-servicer for Wexler's loan.

17. Capital City Home Loans, LLC ("Capital City") is a Georgia limited liability company.

18. Landmark had an agreement or understanding that Capital City was Landmark's agent to charge and collect interest from Wexler and to be Landmark's sub-servicer for Wexler's loan for all purposes.

19. On or about October 2021, per an agreement to be acquired, Landmark Community Bank merged into Simmons Bank.

20. Thus, as of October 2021, Simmons Bank was using Georgia Banking Company as its servicer and Capital City Home Loans, LLC as its sub-servicer.

21. Paragraph 7 of the Agreement titled "Minimum Payment" states that "During the Advance Period [], your minimum monthly payment will be the greater of $100.00 or the accrued finance charge…."

22. Paragraph 8 of the HELOC titled "Finance Charges" describes how interest will be charged.

23. In the first pertinent part of Paragraph 8, it states "The index for your Credit Account is the Prime Rate as most recently published on the first business day of each calendar month in the "Money Rates" table in any

4

U.S. edition, including any electronic edition, of the Wall Street Journal (the "Index").

24. In the other pertinent part of Paragraph 8, it states "The Daily Periodic Rate and its corresponding Annual Percentage Rate may change (increase or decrease) the first day of the Monthly Statement Period after the index changes".

25. Wexler's interest rate is based on two components:

A: what the "Index" is on the first business day of the month; and

B. what the first day of the monthly statement period is after the index changes.

26. Accordingly, an increase in the interest rate on Wexler's HELOC takes effect on the first day of the monthly statement period following an "Index" change.

27. Despite the agreement that an increase in the "Index" will only affect Wexler's interest rate beginning on "the first day of the Monthly Statement Period after" the "Index" increases, Simmons Bank through its agents Georgia Banking Company and Capital City Home Loans, LLC increased Wexler's interest rate immediately without waiting until either the "Index" changes or the first day of the monthly statement period after the "Index" changes.

28. In other words, the agreement obligated Simmons to wait both until the "Index" increases and until the first day of the monthly statement period after the "Index" changes before increasing Wexler's interest rate.

29. Instead, Simmons Bank neither waited until the "Index" increased nor waited until the first day of the monthly statement period after the "Index" increased to increase Wexler's interest rate.

30. Simmons Bank immediately increased the interest rate on Wexler's loan after Prime Rate changed.

31. For instance, Prime Rate was the same since the loan's inception until on or about March 17, 2022, when the Prime Rate increased by .25%.

32. Thus, Wexler's interest rate should have increased only when both the "Index" changed and upon the arrival of the first day of the monthly statement period after the "Index" changed.

33. Instead, Simmons Bank immediately increased Wexler's interest rate when Prime increased in violation of the agreement.

34. This caused Wexler's accrued finance charges and thus minimum payment to be approximately $20 (4%) more than it was supposed to be for the following month.

35. Wexler paid the amount calculated by the Bank.

36. Simmons Bank did the same thing when Prime Rate increased by .5 percent or about May 5, 2022, by increasing Wexler's interest rate immediately in violation of the agreement.
37. This caused Wexler's accrued finance charges and thus minimum payment to be approximately $55 (12%) more than it was supposed to be.
38. Wexler paid the amount calculated by the Bank.
39. Simmons Bank violated the agreement when the prime rate increased by .75 percent on or about June 16, 2022; increasing Wexler's interest rate immediately in violation of the agreement.
40. This caused Wexler's accrued finance charges and thus minimum payment to be approximately $53 (7%) more than it was supposed to be.
41. Also, because each increase in the "Index" (defined as "Prime Rate on the first business day of the calendar month") only took effect *after* the first day of the new monthly statement period, the Bank should only have increased the interest rate for the monthly statement period after the monthly statement period when the "Index" increased.
42. Instead, by increasing the interest rate before it was supposed to, the Bank also earned the increased interest for an additional statement period.

## CAUSES OF ACTION

**COUNT-I**- Violations of the Truth in Lending Act

43. TILA, 15 U.S.C. § 1647(c), and Regulation Z, 12 C.F.R. § 226.5b(f)(3), prohibit creditors such as Simmons Bank from unilaterally changing material terms of an open-end consumer credit plan.

44. In violation of TILA, Simmons Bank changed the terms of the loan which caused Plaintiff damages.

**Count II**- Breach of Contract

45. Plaintiff and the Bank had an agreement.

46. The agreement specified when the interest rate on Plaintiff's variable rate loan would change.

47. In breach of the agreement, the Bank raised Plaintiff's interest rate earlier than it was supposed to causing Wexler damages.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action under Fed. R.Civ.P. 23(b)(3).

49. The first class is defined as all borrowers since January 1, 2022, with the following characteristics:

8

(a) the Bank's records indicate that it extended an open-ended credit plan secured by a borrower's principal dwelling,

(b) with a variable interest loan secured by the influenced by Prime Rate,

(c) Loans in which Defendant increased the borrowers interest rate prior to the date specified in the loan agreement.

50. The second class is defined as all borrowers since January 1, 2022, where the bank agreed to begin charging more interest because of an increase in Prime Rate after some period of time went by but instead the bank began charging increased interest immediately.

51. Each class is so numerous that joinder of all members is impracticable.

52. On information and belief, there are at least hundreds of class members in each class.

53. There are questions of law or fact common to members of each enumerated each class.

54. Such questions include but are not limited to whether Defendant increased interest rates immediately after the Prime Rate changed and whether Defendant had a lawful right to increase interest rates immediately.

55. Plaintiff claims or defenses are typical of the claims or defenses of each enumerated class i.e., whether she was charged interest

immediately after Prime Rate changed and whether Defendant had a right to do so.

56. Plaintiff will fairly and adequately protect the interests of the class.

57. Plaintiff's interests are perfectly in line with the classes.

58. Plaintiff wants wrongfully taken monies to be returned.

59. Plaintiff's counsel is experienced and has the resources to pursue this class action.

60. Plaintiff's damages are approximately less than $1,000 and class members do not have an interest in prosecuting separate cases as they will need to incur nearly the same investment to prosecute their individual case as Plaintiff in this case will incur to prosecute her case.

61. The interests of individual class members are overwhelmingly best served by the conduct of a class action.

62. Individual litigation of this matter would unduly increase expenses to all parties and prolong efficient adjudication given the expected size of the class.

63. Plaintiff does not believe there is any other pending litigation related to these claims.

64. There likely will be no difficulties in managing this class action.

65. The Bank has identifying data on class members which is readily accessible.

66. The Bank can easily provide contact information for the class members.

67. Class members can decide whether they want to participate in this case.

68. For those class members who decide to participate, the Court can decide the case in one fell swoop as to Plaintiff and those class members who are participating will be bound by the Court's decision as to Plaintiff which will apply to them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the class prays for the following relief:

A- An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing undersigned counsel as Class Counsel.

B- A damage award of the wrongful interest charged.

C- An award of reasonable attorney's fees and costs; and

D- Such further and other relief as the Court deems reasonable and just.

**JURY TRIAL**

Plaintiff requests a jury trial pursuant to Rule 38.

Respectfully submitted this 12 day of July 2022.

/S/ *M. Muffy Blue*_____

M. Muffy Blue

Georgia Bar No. 064419

2455 Woodridge Dr.

Decatur Georgia 30033

404-918-7476